**Nelson LEATON, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. WD 65229.

Missouri Court of Appeals, Western District.

April 11, 2006.

Cheryl A. Nield, Jefferson City, MO, for Appellant.

William P. Devoy, Brookfield, MO, for Respondent.

Before EDWIN H. SMITH, C.J., VICTOR C. HOWARD, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

The Director of Revenue (Director) appeals a circuit court judgment that ordered the reinstatement of Mr. Nelson Leaton's

driver's license. At issue is whether the circuit court erred in finding that the Director lacked good cause to require Mr. Leaton to submit to a driving skills test. We reverse.

In November 2003, Mr. Leaton, born in 1914, went to the Driver's License Bureau in Brookfield, and submitted a "Vision Examination Record." He has a permanent eye condition known as macular degeneration. A license bureau technician reported that Mr. Leaton was unable to sign his name in the proper place on the form, although he was able to identify four road signs on a highway-sign recognition test.

In December 2003, he was ordered by the Director to submit to a physical examination to retain his driving privilege. Mr. Leaton was examined by a physician, who noted the eye condition,[1] but reported that Mr. Leaton "is capable of operating a motor vehicle safely and responsibly." In addition, the physician recommended that Mr. Leaton undergo a driving skills test. Mr. Leaton took the driving skills test and failed three times.[2] Thereafter, the Director revoked Mr. Leaton's driver's license.

At a trial de novo hearing, Mr. Leaton testified that it would be an extreme hardship without a driver's license because he needed to drive to purchase groceries and medicine for his terminally ill wife. His son testified that he had been a passenger in a car driven by his father and did not see any reason to believe that his father was endangering himself or others. Finding that the Director lacked good cause under section 302.291[3] to order the driving skills

test, the circuit court reversed the driver's license revocation and ordered the reinstatement of Mr. Leaton's driving privilege.

In a court-tried case, we sustain the judgment unless "there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Pous v. Dir. of Revenue*, 998 S.W.2d 129, 130 (Mo.App. W.D.1999). Whether the Director's determination of good cause had an adequate basis is a question of law. *Burditt v. Dir. of Revenue*, 962 S.W.2d 426, 428 (Mo.App. E.D.1998). The Director bears a heavy burden of proving that good cause exists under section 302.291, and we do not consider any evidence that was not before the Director when the good cause determination was made. *Pous*, 998 S.W.2d at 132; *Burditt*, 962 S.W.2d at 428. The issue is not whether there was good cause to revoke the license; rather, we determine whether there was good cause to require the licensed driver to submit to a driving skills examination. *Pous*, 998 S.W.2d at 132; *Burditt* 962 S.W.2d at 428. The Director may rely on the official reports of highway officials, other officials, or physicians when such reports set forth facts from which a reasonable person could believe that he should exercise the discretion granted by section 302.291. *Pous*, 998 S.W.2d at 132. Our supreme court has indicated that the phrase "good cause" as used in section 302.291 has no fixed meaning, rather it "depends upon the cir-

---

**1.** As to this visual impairment, the physician also answered "yes" to the questions "Should patient be required to wear glasses/lenses while driving?" and "Should patient be restricted to daylight driving?"

**2.** Mr. Leaton's specific problems included: not using his turn signal, driving down the

middle of the road, relying solely on his mirrors to back up, and driving over the parking pole when parallel parking.

**3.** All statutory references are to RSMo. (2000), unless otherwise indicated.

cumstances of the individual case, and a finding of its existence lies largely in the discretion of the officer or court to which the decision is committed." *Wilson v. Morris,* 369 S.W.2d 402, 407 (Mo.1963).

Section 302.291 provides in relevant part:

1. The director, having good cause to believe that an operator is incompetent or unqualified to retain his or her license ... may require the person to submit to an examination as prescribed by the director.

. . . .

3. The director shall have good cause to believe that an operator is incompetent or unqualified to retain such person's license on the basis of, but not limited to, a report by:

(1) Any certified peace officer;

(2) Any physician ... licensed pursuant to chapter 334, RSMo[.]

. . . .

The report must state that the person reasonably and in good faith believes the driver cannot safely operate a motor vehicle and must be based upon personal observation or physical evidence which shall be described in the report, or the report shall be based upon an investigation by a law enforcement officer. The report shall be a written declaration in the form prescribed by the department of revenue and shall contain the name, address, telephone number, and signature of the person making the report.

■ Thus, under the statute, where the Director has good cause to believe that a driver is incompetent or unqualified to retain his license, the decision about whether to order an examination is discretionary. ("director, having good cause ... *may* require ... examination," § 302.291.1 (emphasis added)). Under the

statute, as a matter of law, good cause exists where the record contains a report from a law enforcement officer, physician or family member stating that the driver cannot safely operate a motor vehicle. ("director *shall* have good cause ... [where report states] that the person reasonably and in good faith believes the driver cannot safely operate a motor vehicle," § 302.291.3 (emphasis added)). The Director was alerted to Mr. Leaton's vision problems by a license bureau technician and had good cause to order Mr. Leaton to undergo a physical examination. § 302.291.2 (providing that type of examination required includes written and driving skills tests, vision tests, and a physical or mental examination). According to the circuit court, however, when the physician stated in his opinion, Mr. Leaton "is capable of operating a motor vehicle safely and responsibly," the Director lacked good cause to order any further testing. We disagree.

■ Despite the physician's report, the statute does not preclude a good cause finding by the Director from additional sources of information to justify the examination. Once there is good cause for the examination, the Director may utilize any of the sources of information in subsection 2 as part of the examination.

■ When the Director decided to order a driving skills test, the information before him indicated that the driver was an elderly man in good health with significant vision problems including a permanent macular degeneration condition. Furthermore, it had been observed by a driver's license bureau employee that Mr. Leaton was unable to find the signature line on the "Vision Examination Record" form. Given the public safety issues that are at stake when a potentially unqualified driver operates a motor vehicle on public roads and highways, we think that these

facts constitute the good cause required under the statute to permit the Director to utilize the sources of information in subsection 2 for the examination. Thus, we find that the Director had an adequate basis to make a determination of good cause and that the circuit court erred in ruling otherwise. *Pous*, 998 S.W.2d at 133. Accordingly, we reverse.

EDWIN H. SMITH, C.J., and VICTOR C. HOWARD, J. concur.