

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| CLAY CHASTAIN AND VINCENT LEE, | ) |
| | ) |
| | ) WD78633 |
| Appellants, | ) |
| | ) OPINION FILED: June 8, 2015 |
| v. | ) |
| | ) |
| SYLVESTER JAMES, ET AL., | ) |
| | ) |
| Respondents. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Joel P. Fahnestock, Judge

Before Special Division: Alok Ahuja, Chief Judge, Presiding, Thomas H. Newton, Judge
and Cynthia L. Martin, Judge

This expedited appeal involves election contests filed by Clay Chastain ("Chastain") and Vincent Lee ("Lee") challenging the qualifications of incumbent Mayor Sylvester James ("Mayor James") to appear as a candidate on the April 7, 2015 primary election ballot and on the June 23, 2015 general election ballot for Mayor of Kansas City, Missouri ("City"). Following expedited proceedings, the trial court entered a judgment denying Chastain's leave to file an amended petition, denying Chastain's motion for leave to join Lee as an additional plaintiff, denying Lee's motion to intervene or to join as a

plaintiff in the amended petition, and dismissing the election contest claims asserted by Chastain in his original petition and by Chastain and Lee in the amended petition. Chastain and Lee appeal.

Because the trial court correctly determined that the election contests are time-barred, we affirm.

## Factual and Procedural Background

The trial court entered its judgment ("Judgment") in reliance on stipulated facts.

### *Summary of the Stipulated Facts*

Mayor James is the incumbent candidate for the office of Mayor of the City. On December 9, 2014, Mayor James filed a nominating petition in which he sought re-election. Along with his nominating petition, Mayor James submitted to Marilyn Sanders, the City Clerk ("Sanders" or "City Clerk"), a signed and notarized "Declaration of Tax Payments by Candidate for Municipal Office" ("Declaration"). In the Declaration, Mayor James declared and attested that he was "current on all city taxes and municipal user fees." On December 9, 2014, when the Declaration was signed and submitted, Mayor James was current on all city taxes and municipal user fees as required by Section 204(b)[1] of the City's Charter.

All persons owning taxable personal property in Jackson County, Missouri, must, by December 31st of each calendar year, pay the applicable property tax due on the property. Mayor James owned taxable personal property in Jackson County, Missouri,

---

[1] Section 204(b) of the City Charter provides that: "To be elected or appointed to the Council, including as Mayor, a person shall meet the following requirements: . . . (b) *Taxpayer*. Current on all city taxes or municipal user fees, as attested by the candidate to the City Clerk in a form prescribed by the Director of Finance. . . ."

2

during 2014, specifically two motor vehicles. Mayor James received a property tax statement for both vehicles. Mayor James did not pay the applicable personal property tax due by the deadline of December 31, 2014.

On January 13, 2015, filing for the office of Mayor closed. On February 2, 2015, Mayor James discovered and immediately paid the personal property tax due, along with interest and a late filing penalty. February 12, 2015 was thirty (30) days after January 13, 2015.

On April 7, 2015, the City conducted a primary nominating election for mayoral and city council candidates. There were three mayoral candidates: Mayor James, Lee and Chastain. The Kansas City Board of Election Commissioners, and the Cass, Platte, and Clay County Boards of Election Commissioners, are the election authorities authorized to conduct the April 7, 2015 primary election. The Kansas City Board of Election Commissioners is, however, the accumulation board of the City responsible for certifying the official results of the April 7, 2015 primary election for the City, including the office of Mayor. This certification includes the results from all election authorities for the City.

On April 15, 2015, the Kansas City Board of Election Commissioners released the official results for the April 7, 2014 primary election certifying that Mayor James had received over 80% of the votes cast, followed by Lee, who received the second highest number of votes cast. Chastain finished last. Section 605(a)(1) of the City's Charter provides that the two candidates receiving the highest number of votes cast in the primary election shall advance to the general election.

3

*Procedural History*

On April 15, 2015, Chastain filed an unverified *pro se* "Motion to Disqualify Mayoral Candidate Sylvester James" ("Chastain's Election Contest") in the Circuit Court of Jackson County, Missouri, naming Mayor James and Sanders as the "contestees."[2] Chastain's Election Contest sought an "order to disqualify [Mayor James] as a [City] Mayoral Candidate in the upcoming general election *because [Mayor James] failed to meet candidate qualifications to have his name placed on the primary ballot*." [L.F. 6] (Emphasis added.) Chastain's Election Contest asserted that City Charter provisions disqualified Mayor James from appearing on the primary ballot, and that as a result, "the next highest vote getter, [Chastain], would have his name placed on the general election ballot."[3] [L.F. 8] Chastain's Election Contest requested an emergency hearing and expedited ruling.

On April 27, 2015, the trial court entered a Scheduling Order. The Scheduling Order required Mayor James and Sanders to "file responsive pleadings" by April 28, 2015, and further scheduled a hearing to dispose of Chastain's Election Contest on May 1, 2015. [L.F. 2]

On April 28, 2015, Mayor James and Sanders each filed a pleading denominated as a "Motion to Dismiss" which explained why Mayor James was qualified to appear as a

---

[2] Section 115.526.3 provides that in an election contest filed by one candidate challenging another candidate's qualifications for the same office, the challenging candidate is to be referred to as the "contestant" and the challenged candidate is to be referred to as the "contestee." All statutory references are to RSMo 2000 as supplemented through the date of the events at issue in the proceedings before the trial court unless noted.

[3] Chastain has not cited any authority that would authorize or require the trial court or this court to add his name to the general election ballot. Assuming, *arguendo*, that this authority exists, that relief is not available to Chastain. Section 115.125.2 provides that "[n]o court shall have the authority to order an individual or issue be placed on the ballot less than six weeks before the date of the election . . . ." This appeal is being heard less than six weeks before the June 23, 2015 general election for City Mayor.

4

candidate on the primary election ballot and asserted several legal defenses to Chastain's Election Contest, including that the election contest had not been timely filed pursuant to section 115.526.2.

On April 29, 2015, an attorney entered an appearance for Chastain. On April 30, 2015, Chastain filed a "Motion for Leave to Amend Petition." He filed on the same date, (but without leave of court), a "First Amended Petition to Contest the Qualifications of a Candidate to Seek and to Hold Office of Mayor and to Have his Name Printed on the Ballot" ("Amended Election Contest"). The Amended Election Contest added Lee as an additional "contestant."[4] The Amended Election Contest asserted two counts. Count I, titled "Primary Election," was asserted and verified by Chastain only, and contested Mayor James's qualifications to appear as a candidate on the ballot for the April 7, 2015 *primary election*. Count II, titled "General Election," was asserted and verified by Lee only, and contested Mayor James's qualifications to appear as a candidate on the ballot for the June 23, 2015 *general election*. Both Counts of the Amended Election Contest relied exclusively on section 115.526 as the source for authority to assert a claim of candidate disqualification. [L.F. 68-70; 73]

On April 30, 2015, Chastain also filed a "Motion to Join Party Plaintiff," seeking to add Lee as a plaintiff so Lee could assert Count II in the Amended Election Contest; Lee filed a "Motion to Intervene and for Leave to Join in the Filing of a First Amended Petition;" Chastain and Lee filed "Contestants' Request for and Proposed Findings of Facts and Conclusions of Law;" and Chastain and Lee filed a "Notice of Hearing and

---

[4] Chastain's attorney signed the Amended Election Contest on behalf of Chastain and Lee.

Motion to Shorten Time" setting their pending motions for hearing on May 1, 2015, at the same time scheduled for disposition of Chastain's Election Contest on the merits.

Just prior to the May 1, 2015, hearing, the parties filed a "Stipulation" setting forth the stipulated facts summarized above. Mayor James and Sanders each filed a "Consolidated Response" to the pending motions which explained why Mayor James was qualified to appear as a candidate on the primary and general election ballots and asserted several legal defenses to the Amended Election Contest, including that Chastain's and Lee's claims were time-barred by section 115.526.2.[5] And Chastain and Lee filed their "Contestants' Pre-Trial Brief." The trial court proceeded with the hearing, and then entered an Order taking "all matters" under advisement. The Order directed that any additional briefing had to be filed by May 4, 2015.

On May 4, 2015, Mayor James filed "Proposed Findings of Fact and Conclusions of Law," and Chastain and Lee filed "Contestants' Suggestions in Opposition to Motion to Dismiss of Mayor James and City Clerk."

On May 6, 2015, the trial court entered its Judgment. The Judgment denied Chastain's motion to join Lee as a plaintiff; denied Chastain's motion for leave to file the Amended Election Contest; denied Lee's motion to intervene and for leave to join in the Amended Election Contest; dismissed Chastain's Election Contest on the merits; and alternatively dismissed the Amended Election Contest on the merits.

---

[5] Section 115.526.2 requires a challenge by one candidate to the qualifications of another candidate for the same office to appear on a primary election ballot to be filed "not later than thirty days after the final date for filing for such election." Section 115.526.2 requires a challenge by one candidate to the qualifications of another candidate for the same office to appear on a general election ballot to be filed "not later than five days after the latest date for certification of a candidate by the officer responsible for issuing such certification."

On May 18, 2015, Chastain and Lee filed a notice of appeal.[6] We granted their motion to expedite the appeal and heard oral argument on June 5, 2015.[7]

**Summary of Issues on Appeal**

Chastain and Lee assert eight points on appeal. Points three, four, five, and six challenge the trial court's denial of Chastain's motion for leave to file the Amended Election Contest (point three); Chastain's motion to join Lee as a plaintiff (point four); Lee's motion to intervene in the Amended Election Contest (point five); and Lee's motion to be joined as a plaintiff in the Amended Election Contest (point six) (collectively, the "Procedural Motions"). Points one, two, seven, and eight challenge the conclusions of law relied on by the trial court to dismiss Chastain's Election Contest and, alternatively, the Amended Election Contest.

If one or more of the trial court's conclusions of law support dismissal of Chastain's Election Contest and the Amended Election Contest, resolution of the points on appeal addressing the Procedural Motions will be unnecessary, as any error would be

---

[6] The Kansas City Board of Election Commissioners, a nonparty to this case, corresponded with the Court on May 20, 2015 expressing its concern that no relief could be granted on appeal that would require a change to the names of the candidates on the general election ballot because section 115.379.2 provides that "[w]henever a candidate for nomination or election to an office is disqualified after 5:00 p.m. on the sixth Tuesday prior to a primary election, [or] general election . . . his name shall be printed on the primary, [or] general . . . ballot, as the case may be. The election and canvass shall proceed, and, if a sufficient number of votes are cast for the disqualified candidate to entitle him to nomination or election had the candidate not become disqualified, a vacancy shall exist on the general election ballot or in the office to be filled in the manner provided by law." We need not decide if section 115.379.2 is applicable here.

[7] Chastain and Lee were entitled to an expedited appeal pursuant to section 115.551. Section 115.551 provides that "[e]ither party to *the contest* may appeal the judgment of the circuit court to the court of appeals of the appropriate jurisdiction, who shall give the case preference in the order of hearing to all other cases, modify its rules to the extent necessary in order to conclude the appeal as many days prior to the general election as possible and to hear the case in the manner of appeals of cases in equity." (Emphasis added.) The phrase "the contest" in section 115.551 refers to election contests described in sections 115.526 through 115.549. *Cf.* section 115.597 (addressing the right of appeal "[i]n all cases of contested elections," but which is nonetheless limited to election contests described in sections 115.553 to 115.583).

rendered harmless. We begin our analysis, therefore, with a discussion of points one, two, seven, and eight on appeal.

## Standard of Review

To determine our standard of review for points one, two, seven, and eight on appeal, we must address the nature of the Judgment. The Judgment granted "motions to dismiss" filed by Mayor James and Sanders. "The standard of review for a circuit court's grant of a motion to dismiss is *de novo*." *Noble v. Shawnee Gun Shop, Inc.*, 409 S.W.3d 476, 478 (Mo. App. W.D. 2013). Ordinarily, this review is constrained to the facts alleged in a petition, which are taken as true and liberally construed to determine whether "the facts alleged meet the elements of a recognized cause of action . . . ." *Id.*

Here, however, the Judgment reflects that the trial court ruled all legal issues before it in "reli[ance] on the facts as stipulated by the parties." [L.F. 109] Though the stipulated facts are largely set forth in the Amended Election Contest, they are not entirely so, and the stipulated facts plainly exceed the factual allegations in Chastain's Election Contest. Moreover, the "motions to dismiss" were not limited to an attack on the sufficiency of the facts alleged in the petitions and instead raised additional facts explaining why Mayor James's qualifications were not subject to contest. And prior to entry of the Judgment, the parties filed pleadings (including pre-trial briefs and proposed findings of fact and conclusions of law) reflecting an expectation that the trial court would rule the merits of Chastain's Election Contest and the Amended Election Contest. It is thus plain from the record that, with the parties' acquiescence, the trial court did not confine itself to a review of the facts alleged in either Chastain's Election Contest or the

8

Amended Election Contest in entering its Judgment. We therefore construe the Judgment as having disposed of all matters pending before the trial court following a bench trial based on stipulated facts and evidence. *See Grant v. Sears*, 379 S.W.3d 905, 914 (Mo. App. W.D. 2012) (holding that trial court conducted a hearing based on the parties' stipulation to all evidence yielding a judgment following a bench trial, notwithstanding judgment's reference to granting motion for judgment on the pleadings).

"Because [this] case was submitted on stipulated facts and did not involve the trial court's resolution of conflicting testimony, our review is not governed by *Murphy v. Carron*, 536 S.W.2d 30, 31 (Mo. banc 1972); rather 'the only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated.'" *Archey v. Carnahan*, 373 S.W.3d 528, 531 (Mo. App. W.D. 2012) (quoting *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979) (other citations omitted)). "Thus, our review is *de novo*." *Archey*, 373 S.W.3d at 531 (citing *Mo. Mun. League v. Carnahan*, 303 S.W.3d 573, 580 (Mo. App. W.D. 2010)). Our review is not constrained to the face of Chastain's Election Contest or of the Amended Election Contest but includes the entire record.

**Dismissal of the Election Contest Claims (Points One, Two, Seven, and Eight)**

The Judgment dismissed the claims asserted in Chastain's Election Contest and in the Amended Election Contest as a matter of law because: (1) Chastain and Lee failed to exhaust the administrative remedy for challenging a candidate's non-payment of taxes described in section 115.342; (2) Chastain and Lee filed their section 115.526 election contests out of time; (3) the City Charter provisions relied on in Chastain's Election

9

Contest do not support a conclusion that Mayor James failed to possess required candidate qualifications; and (4) section 115.346, the statute relied on to establish that Mayor James lacked required candidate qualifications in the Amended Election Contest, is of no import because the statute has been repealed. [L.F. 113]

In point one on appeal, Chastain and Lee allege it was error to dismiss their election contest claims because section 71.005, which requires a municipal candidate to comply with section 115.346, survived repeal of section 115.346 and thus disqualifies candidates who are delinquent in the payment of municipal taxes as of the candidacy filing deadline.[8] In point two on appeal, Chastain and Lee allege it was error to dismiss their election contest claims for failure to exhaust an administrative remedy because section 115.342 does not apply to the City's mayoral elections.[9] In point seven on appeal, Chastain and Lee allege it was error to dismiss their election contest claims on the basis of a lack of standing as both had standing pursuant to section 115.526.1 *and* in equity with a remedy in prohibition. Finally, in point eight on appeal, Chastain and Lee allege it was error to dismiss their election contest claims as barred by the statute of limitations set forth in section 115.526.2 because Chastain's Election Contest should be broadly read as a writ of prohibition challenging Mayor James's qualifications to appear on *both* the

---

[8] Mayor James and Sanders counter that the repeal of section 115.346 impliedly repealed section 71.005 which served no purpose other than to cross-reference section 115.346, particularly in light of the fact that the legislature amended section 115.342 at the same time it repealed section 115.346 to include "municipal taxes" as a type of tax the non-payment of which could result in a candidate for public office's disqualification unless cured in the time and manner provided. For reasons we explain, *infra*, we do not determine the effect of repeal of section 115.346 on the continued viability of section 71.005.

[9] Mayor James and Sanders counter that section 115.342 applies to every candidate for public office. For reasons we explain, *infra*, we do not determine whether Chastain and Lee failed to exhaust an administrative remedy applicable to their challenges to Mayor James's qualifications to appear on the primary and general election ballots.

10

primary and general election ballots, a claim as to which the statute of limitations would not apply.

Before addressing these points on appeal, we observe that Chastain and Lee have not challenged the trial court's dismissal of Chastain's Election Contest because the City Charter provisions it relied on do not establish that Mayor James was disqualified as a candidate either factually or as a matter of law.[10] The failure to challenge this ruling, which independently supports the trial court's Judgment dismissing Chastain's Election Contest, is fatal to Chastain's and Lee's appeal of any other basis relied on by the trial court to dismiss Chastain's Election Contest. *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012) (holding that failure to challenge each independent basis for judgment is fatal to appeal); *City of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588, 590-91 (Mo. App. W.D. 2009). We therefore constrain our review of points one, two, seven, and eight on appeal to the trial court's alternative dismissal of the Amended Election Contest.

Points one and two on appeal collectively challenge the trial court's conclusion that the Amended Election Contest failed to establish that Mayor James is not a qualified candidate. Points seven and eight on appeal collectively challenge the trial court's conclusion that the Amended Election Contest was time-barred.[11] We address whether

_____

[10] The Amended Election Contest abandoned reliance on City Charter provisions to establish Mayor James's disqualification as a candidate and instead relied exclusively on section 71.005 and its cross-reference to section 115.346. In contrast, Chastain's Election Contest made no reference to section 71.005 or to section 115.346 and instead relied exclusively on City Charter provisions to challenge Mayor James's qualifications. Thus, the trial court's conclusion of law regarding the City Charter provisions applied only to dismissal of Chastain's Election Contest.

[11] Though point seven challenges the trial court's dismissal of the Amended Election Contest based on a lack of standing, the point misapprehends the Judgment. The Judgment did not independently dismiss the Amended

11

the Amended Election Contest was time-barred first, as affirmance of the Judgment on this basis would negate any need to address whether the Amended Election Contest established that Mayor James was a disqualified candidate.

### *The Timeliness of the Amended Election Contest (Points Seven and Eight)*

The Amended Election Contest relies exclusively on section 115.526 as the source for Chastain's and Lee's authority to challenge Mayor James's qualifications to appear on either the primary or the general election ballot. "Sections 115.526 to 115.601 govern election contests." *Wright-Jones v. Johnson*, 256 S.W.3d 177, 180 (Mo. App. E.D. 2008). "[T]he right to contest an election is conferred by statute only; it is not a common law or equitable right." *Id.*; *see also Board of Election Com'rs of St. Louis County v. Knipp*, 784 S.W.2d 797, 798 (Mo. banc 1990). Section 115.526 "provides the statutory mechanism for candidates to challenge the qualifications of any other candidate to the same office." *State v. Young*, 362 S.W.3d 386, 394 (Mo. banc 2012). Section 115.526 thus creates "a private right of action" permitting a candidate "to challenge the qualifications of any other candidate to the same office," and "is distinguishable from a quo warranto proceeding, which must be instituted by the attorney general or a prosecuting attorney and whose purpose is to determine lawful title to office."[12] *Id.*

Election Contest because Chastain and Lee lacked standing. Rather, the Judgment's discussion of standing was related to the determination that the Amended Election Contest was time-barred and specifically to whether Count II of the Amended Election Contest (Lee's challenge to Mayor James's qualifications to appear on the general election ballot) could relate back to the filing of Chastain's Election Contest pursuant to Rule 55.33(c). Because, as we explain, *infra*, the trial court correctly dismissed the Amended Election Contest as time-barred, and correctly concluded (independent of the Judgment's standing discussion) that Lee's election contest claim did not relate back to the filing of Chastain's Election Contest, the Judgment's standing discussion is superfluous and need not be further addressed.

[12] A candidate's right to challenge the qualifications of another candidate for the same office described in section 115.5526 is distinguishable from the right to challenge the *results* of an election due to "election

Election contest statutes "are a code unto themselves," and election contest procedures are "'exclusive and must be strictly followed as substantive law.'" *Foster v. Evert*, 751 S.W.2d 42, 44 (Mo. banc 1988) (quoting *Hockemeier v. Berra*, 641 S.W.2d 67. 69 (Mo. banc 1982)); *see also State ex rel. Hancock v. Spencer*, 65 S.W. 984, 985 (Mo. banc 1901).

Section 115.526.1 provides:

> 1. Any candidate for nomination to an office at a primary election may challenge the declaration of candidacy or qualifications of any other candidate for nomination to the same office to seek or hold such office, or to have his name printed on the ballot, and any candidate for election to an office at a general or special election may challenge the declaration of candidacy or qualifications of any other candidate for election to the same office to seek or hold such office or to have his name printed on the ballot. Except as provided in sections 115.563 to 115.573,[13] challenges shall be made by filing a verified petition with the appropriate court as is provided for in case of a contest of election for such office in sections 115.527 to 115.601. The petition shall set forth the points on which the challenger wishes to challenge the declaration of candidacy or qualifications of the candidate and the facts he will prove in support of such points, and shall pray leave to produce his proof.

Section 115.526 thus describes the exclusive process by which one candidate for office can challenge the qualifications of another for the same office.[14]

Section 115.526.2 sets forth the timeframe within which a candidate must challenge the qualifications of another candidate for the same office.

---

irregularities." *Wright-Jones*, 256 S.W.3d at 180; *see* Sections 115.527, 115.531, and 115.553 (addressing a candidate's or a registered voter's ability to challenge the *results* of an election based on election irregularities).

[13] These provisions relate to election contests for the office of state senator or state representative and are not applicable to this case.

[14] *Vowell v. Kander*, 451 S.W.2d 267, 273 (Mo. App. W.D. 2014), *opinion adopted and reinstated after transfer* (July 17, 2014), is not inconsistent with this conclusion. In *Vowell*, we recognized that section 115.526 does not "provide the exclusive mechanism by which a candidate's qualifications can be challenged," as section 115.526 does "not supersede the right for a prosecuting attorney or the attorney general to pursue a *quo warranto* action." *Id*. at 273 (citing *State v. Young*, 362 S.W.3d 386, 394 (Mo. banc 2012)). That is true. However, section 115.526 does provide the exclusive mechanism for *a candidate* to challenge another candidate's qualifications.

13

2. In the case of challenge to a candidate for nomination in a primary election, the petition shall be filed not later than thirty days after the final date for filing for such election. Except as otherwise provided by law, in the case of challenge to a candidate for election to an office in a general or special election, the petition shall be filed not later than five days after the latest date for certification of a candidate by the officer responsible for issuing such certification. In the case of a disability occurring after said respective deadlines, the petition shall be filed not later than five days after the disability occurs or is discovered. Answers to the petition may be filed at the time and as provided in sections 115.527 to 115.601, specifying the qualifications of the candidate holding the office for which he is a candidate for election or for nomination.

**(i)  The Timeliness of Chastain's Claim in the Amended Election Contest**

In Count I of the Amended Election Contest, Chastain challenged Mayor James's qualifications to appear on the April 7, 2015 *primary* election ballot. Lee is not named as a party to Count I.

Section 115.526.2 required Chastain to file his challenge to Mayor James's qualifications to appear as a candidate on the primary election ballot by "not later than thirty days after the final date for filing for such election." The parties stipulated that the final date for filing for election for City Mayor was January 13, 2015. The Amended Election Contest was filed (without leave of court) on April 30, 2015, more than thirty days after January 13, 2015, and is plainly time-barred by section 115.526.2. Even presuming for the sake of argument that Count I of the Amended Election Contest related back to the date of filing of Chastain's Election Contest pursuant to Rule 55.33(c),[15]

---

[15] All citations to the Rules are to *Missouri Court Rules Volume I--State* (2015). We need not decide whether Rule 55.33 applies to section 115.526 election contests, although this is not a foregone conclusion. As noted, election contest statutes are "a code unto themselves." *Foster*, 751 S.W.2d at 44. And election contest procedures are "'exclusive and must be strictly followed as substantive law.'" *Id.* (quoting *Hockemeier*, 641 S.W.2d at 69); *see also Moore v. Moorhead*, 666 S.W.2d 460, 461 (Mo. App. W.D. 1984) (holding that relevant procedural

14

Count I of the Amended Election Contest would remain time-barred. The parties stipulated that Chastain's Election Contest was filed on April 15, 2015, well beyond February 12, 2015, the thirtieth day after January 13, 2015, the final date for filing for election for City Mayor.[16]

Chastain concedes that his challenge to Mayor James's qualifications to appear on the primary election ballot is time-barred by section 115.526.2 unless safe haven language in the statute applies to extend his statute of limitations. Section 115.526.2 provides that for "a disability *occurring after said respective deadlines* [referring to the deadlines for filing section 115.526 election contests], the petition shall be filed not later than five days after the disability occurs or is discovered." (Emphasis added.) This safe haven does not apply to Chastain.

The alleged disability Chastain relies on to claim disqualification is Mayor James's failure to pay 2014 personal property taxes by the date they were due. The parties stipulated that this alleged disability occurred when Mayor James failed to pay property taxes due on December 31, 2014. The alleged disability plainly occurred *before* Chastain's February 12, 2015 deadline to initiate a challenge to Mayor James's qualifications to appear on the primary election ballot.

Chastain asserts in conclusory fashion that the safe haven applies because Chastain's Election Contest was filed within five days of Chastain's discovery of Mayor

---

rules and statutes govern procedures in election contests unless inconsistent with procedures set forth in election contest statutes).

[16] In fact, Chastain's Election Contest was filed *after* the April 7, 2015 primary election. In *Wright-Jones*, 256 S.W.3d at 180, the Eastern District held that a section 115.526 challenge to a candidate's qualifications to appear on a primary election ballot must be brought "*before* a primary election is held." (Emphasis added.) We do not need to address in this case whether the holding in *Wright-Jones* is subject to exceptions.

15

James's untimely payment of his personal property taxes. Chastain offered no evidence to support his bare assertion of "late discovery." More to the point, Chastain has not explained how late discovery of Mayor James's untimely payment of property taxes would matter, as discovery of a disability is only relevant with respect to "a disability *occurring after said respective deadlines*." Section 115.562.2 (emphasis added). "If a party does not support contentions with relevant authority or argument beyond conclusory statements, the point is deemed abandoned." *Houston v. Weisman*, 197 S.W.3d 204, 206 (Mo. App. E.D. 2006).

Alternatively, Chastain argues in this appeal that the *pro se* Chastain Election Contest was not subject to section 115.526.2's statute of limitations because it "should have been deemed a claim in prohibition, not a statutory claim under section 115.526.1, RSMo and therefore the time limitations in section 115.526.2 would be no bar to [Chastain's] pro se claims." [Appellants' Brief, p. 49] Chastain thus argues that "the statutory remedy is not the only remedy when a candidate fails to pay his municipal taxes as required by law . . . ." [Appellants' Brief, p. 49] According to Chastain, if Chastain's Election Contest was a viable claim in prohibition, then Count I of the Amended Election Contest, would be spared the bar of the statute of limitations because it would relate back to Chastain's first attempt to assert a challenge to Mayor James's qualifications to appear on the primary election ballot.

Chastain never raised this argument before the trial court, though he was aware from the outset that Mayor James and Sanders were defending his challenge to Mayor James's qualifications to appear on the primary ballot as untimely pursuant to section

16

115.526.2. An argument seeking to negate a legal defense cannot be raised for the first time on appeal. *Williams v. Greene County Sheriff's Dept.*, 94 S.W.3d 450, 453 (Mo. App. W.D. 2003) (holding that argument presented for first time on appeal challenging statute of limitations relied on to dismiss claim preserves nothing for appellate review). On this basis alone, Chastain's new assertion that Chastain's Election Contest was a claim in prohibition as to which the statute of limitations does not apply is unavailing. We "will not, on review, convict a lower court of error on an issue which was not put before it to decide." *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982).

In any event, the newly minted effort to recast Chastain's Election Contest as a claim in prohibition is without merit. The effort is contrary to Supreme Court precedent which holds that "[t]he right to contest an election exists by virtue of statute; it is not a common law or equitable right," *Board of Election Com'rs of St. Louis County*, 784 S.W.2d at 798, and which holds that election contest procedures are "'exclusive and must be strictly followed as substantive law.'" *Foster*, 751 S.W.2d at 44 (quoting *Hockemeier*, 641 S.W.2d at 69). In fact, "[a] candidate for nomination to public office has no inherent right to contest his opponent's nomination at a primary election." *Dally v. Butler*, 972 S.W.2d 603, 607 (Mo. App. S.D. 1998) (citing *State ex rel. and to Use of Conran v. Duncan*, 63 S.W.2d 135, 137 (Mo. banc 1933)). "Where statutes afford such a right, they are controlling and exclusive." *Dally*, 972 S.W.2d at 607 (citing *State ex rel. and to Use of Conran*, 63 S.W.2d at 138).

Chastain ignores this precedent and relies exclusively on the case of *State ex rel. Grailike v. Walsh*, 483 S.W.2d 70 (Mo. banc 1972) to contend that prohibition remains an

17

available vehicle by which one candidate can challenge the qualifications of another candidate for the same office. His reliance is misplaced. *State ex rel. Grailike* predates the General Assembly's enactment of the Comprehensive Election Reform Act of 1977 ("Act"). Section 115.001. That Act had "[t]he purpose . . . to simplify, clarify and harmonize the laws governing elections." Section 115.003. Its express scope, "[n]otwithstanding any other provision of law to the contrary, . . . [is to] apply to all public elections in the state, except elections for which ownership of real property is required by law for voting." Section 115.005.

"The writ of prohibition, an extraordinary remedy, is to be used with great caution and forbearance and only in cases of extreme necessity." *State ex rel. Douglas Toyota III, Inc. v. Keeter*, 804 S.W.2d 750, 752 (Mo. banc 1991). "Prohibition . . . cannot be used to adjudicate grievances that may be adequately redressed in the ordinary course of judicial proceedings." *Id.* The Act created a private cause of action permitting one candidate to challenge the statutory qualifications of another candidate for the same office. Though prohibition may have been an avenue available to raise such a challenge before adoption of the Act, that is no longer the case. Chastain had an adequate (and exclusive) remedy at law pursuant to section 115.526. Prohibition is not available to circumvent the strict procedures set forth in the Act. "Even courts of equity have no power, absent statutory authority, to determine election contests." *State ex rel. Bushmeyer v. Cahill*, 575 S.W.2d 229, 232 (Mo. App. St. L. 1978) (citing *Nichols v. Reorganized School Dist. No. 1 of Laclede County*, 364 S.W.2d 9, 13 (Mo. banc 1963)).

18

In summary, Count I of the Amended Election Contest is time-barred. "Inasmuch as statutes governing election contests are a code unto themselves . . . the jurisdiction of the trial court is confined strictly to the pertinent statutory provisions, hence the letter of the law is the limit of the court's power." *Dally*, 972 S.W.2d at 608 (citing *State ex rel. Conaway v. Consolidated School Dist. No. 4 of Iron County*, 417 S.W.2d 657, 659 (Mo. banc 1967) (other citations omitted)). As a matter of law, the trial court had no power to entertain Chastain's untimely challenge to Mayor James's qualifications to appear on the primary election ballot, and, thus, did not error in dismissing that claim as time-barred pursuant to section 115.526.2.

### (ii)  The Timeliness of Lee's Claim in the Amended Election Contest

In Count II of the Amended Election Contest, Lee challenged Mayor James's qualifications to appear on the June 23, 2015 *general* election ballot. Chastain is not named as a party to Count II.

Section 115.526.2 required Lee to file his petition challenging Mayor James's qualifications to appear on the general election ballot "not later than five days after the latest date for certification of a candidate by the officer responsible for filing such certification," except as otherwise provided by law. The Judgment acknowledged this language and concluded that because Mayor James was certified on April 15, 2015, by the Kansas City Board of Election Commissioners as one of the two candidates receiving the highest number of votes in the April 7, 2015 primary election, Count II in the Amended Election Contest had to be filed by April 20, 2015. [L.F. 111]

19

Lee does not challenge the trial court's legal conclusion that the date Mayor James's was actually certified (April 15, 2015) was the "latest date for certification of a candidate," and, thus, the date on which the five day statute of limitations applicable to his claim commenced. Instead, Lee accepts the premise that the date of actual certification is the functional equivalent of the "latest date for certification." As a result, we will not address the meaning of the phrase "latest date for certification of a candidate" but accept for purposes of this appeal the trial court's unchallenged conclusion that this date is the equivalent of the date Mayor James was actually certified.[17]

Lee does raise two other arguments in ascribing error to the trial court's dismissal of Count II of the Amended Election Contest as time-barred. First, Lee argues that Chastain's Election Contest was a challenge to Mayor James's qualifications to appear on **both** the primary and the general election ballots and that Count II of the Amended Election Contest should therefore relate back to the date Chastain's Election Contest was filed, April 15, 2015, sparing Count II from the bar of the statute of limitations. Second, Lee argues that even if Count II of the Amended Election Contest does not relate back pursuant to Rule 55.33(c), because *pro se* Chastain's Election Contest is vaguely asserted and could be construed as a claim in prohibition, Count II of the Amended Election

---

[17] It is not clear what the legislature means by the phrase "latest date for certification of a candidate." We note that Section 115.523.1 generally provides that "[a]s soon as possible after each primary election, each person nominated for an office at the primary election shall be issued a certificate of nomination." We further note that Section 115.125.1 provides that the officer or agency calling an election [which would be the City, in this case] shall, "[n]ot later than 5:00 p.m. on the tenth Tuesday prior to any election . . . notify the election authorities responsible for conducting the election" by delivering a "certified copy of the legal notice to be published pursuant to subsection 2 of section 115.127." The tenth Tuesday prior to the general election would have been April 14, 2015. Here, the certification issued on April 15, 2015, and, as was addressed in the Stipulation, was not issued by the City but by the election authority (the Kansas City Board of Election Commissioners). [L.F. 33-34] Because Lee does not raise the meaning of "latest date for certification of a candidate" as an issue on appeal, we do not determine the meaning of the phrase.

20

Contest should be similarly recast as a claim in prohibition as to which no statute of limitations applies, relying on *State ex rel. Grailike*.

We dispense with the second argument first. The argued absence of crisp claim identification in Chastain's Election Contest is of no import in characterizing the claim asserted by Lee in Count II of the Amended Election Contest. Count II of the Amended Election Contest plainly and exclusively asserted a claim challenging Mayor James's qualifications to appear on the general election ballot in reliance on section 115.526.2. [L.F. 73] Count II of the Amended Election Contest suffers no vagueness warranting its recasting as a claim in prohibition. And even if it did, for reasons already explained, Lee's claim in this regard is not preserved, having never been made to the trial court, *Williams*, 94 S.W.3d at 453, and has no merit, as *State ex rel. Grailike* is not probative.

Lee's first argument, which claims that the trial court erroneously concluded that Count II in the Amended Election Contest did not relate back to the date Chastain's Election Contest was filed pursuant to Rule 55.33(c), suffers from several defects. First, this claim of error is not preserved for our review. It is not captured in either point seven or eight on appeal. Point seven addresses the trial count's standing findings.[18] Point eight argues only that the Amended Election Contest is not time-barred because it should be read to allege a claim in prohibition not subject to the statute of limitations. "'We do not review arguments and issues raised under a point that are not fairly encompassed by that point.'" *Nichols v. Division of Employment Sec.*, 399 S.W.3d 901, 904 (Mo. App. W.D.

---

[18] *See* footnote 11, *supra*, explaining why point seven on appeal misapprehends the Judgment.

21

2013) (quoting *Dubose v. City of St. Louis*, 210 S.W.3d 391, 394 (Mo. App. E.D. 2006) (internal citation omitted)).

Second, Lee's current contention that Count II of the Amended Election Contest relates back to Chastain's Election Contest is inconsistent with Chastain's "Motion for Leave to Amend Petition" which did not seek leave to amend so that Lee could assert his independent contest to Mayor James's qualifications to appear on the general election ballot. Instead, Chastain's "Motion for Leave to Amend Petition" sought leave to amend solely for the purpose of permitting *Chastain* to remediate his admitted failure "to plead sufficiently definite and certain factual and legal allegations requisite to *his claim* contesting the qualifications of [Mayor James]." [L.F. 65] (Emphasis added.) Count II of the Amended Election Contest had no bearing on remediating Chastain's conceded pleading defects in pleading his own claim. Rather, Count II was a new claim asserted by a new plaintiff.

Finally, even presuming the application of Rule 55.33 to statutory election contests,[19] and even presuming that the Amended Election Contest was filed as a matter of right or that denial of leave for its filing was an abuse of discretion, Count II of the Amended Election Contest did not relate back to the date Chastain's Election Contest was filed because it was a new claim asserted by a new plaintiff.

Rule 55.33(c) provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set

---

[19] *See* footnote number 15, *supra*.

22

forth in the original pleading, the amendment relates back to the date of the original pleading.

Lee argues that since Count II of the Amended Election Contest arises out of the same conduct as that set forth in Chastain's Election Contest (Mayor James's failure to timely pay his 2014 personal property taxes), Count II of the Amended Election Contest relates back to the date Chastain's Election Contest was filed. However, "Rule 55.33(c) 'does not authorize an amendment which states an entirely new claim.'" *Poplar Bluff Internet, Inc. v. City of Poplar Bluff*, 427 S.W.3d 343, 355 (Mo. App. S.D. 2014) (quoting *Caldwell v. Lester E. Cox Medical Centers-South, Inc.*, 943 S.W.2d 5, 8 (Mo. App. S.D. 1997)). And "Rule 55.33(c) does not [apply] . . . to an amendment which seeks to add a party." *Caldwell*, 943 S.W.2d at 8. Count II of the Amended Election Contest is a new claim--a challenge to Mayor James's qualifications to appear on the ***general*** election ballot where Chastain's Election Contest challenged only Mayor James's qualifications to appear on the ***primary*** election ballot. And Count II of the Amended Election Contest is asserted by a new plaintiff--Lee. Count II of the Amended Election Contest does not relate back to the date Chastain's Election Contest was filed. *Id*. (holding that addition of another plaintiff in third amended petition to assert lost chance of survival claim is "tantamount to the filing of a new claim" and does not relate back to the original petition as to save the new action from the statute of limitations).

Lee argues on appeal that Count II of the Amended Election Contest is not a "new claim" because Chastain's Election Contest should be broadly read to have asserted a claim challenging Mayor James's qualifications to appear on ***both*** the primary and

23

general election ballots. He thus argues that his claim challenging Mayor James's qualifications to appear on the general election ballot relates back to Chastain's assertion of the same claim.

We reject the premise that Chastain's Election Contest intended or endeavored to assert a challenge to Mayor James's qualifications to appear on **both** the primary and general election ballots. While we recognize that Chastain's Election Contest was filed *pro se*, Chastain's Election Contest unequivocally sought an "order to disqualify [Mayor James] as a [City] Mayoral Candidate in the upcoming general election **because [Mayor James] failed to meet candidate qualifications to have his name placed on the primary ballot**." [L.F. 6] (Emphasis added.) Chastain argued that because Mayor James was disqualified from appearing on the primary ballot, his name would be removed from the general election ballot and "the next highest vote getter, [Chastain], would have his name placed on the general election ballot." [L.F. 8] Chastain's general election ballot references were made only in the context of a requested remedy should Mayor James be deemed to have been unqualified to appear on the primary election ballot and were not expressed as a separate cause of action challenging Mayor James's qualifications to appear on the general election ballot. This conclusion is confirmed by Chastain's Motion to Join Party Plaintiff. Chastain admitted in this motion that he needed to join Lee as a plaintiff in the Amended Election Contest to assert Mayor James's disqualification to appear on the general election ballot because "[Chastain] is not a candidate for the general election and **may not have standing** to contest the qualifications of [Mayor

24

James] to seek or be a candidate for the office of Mayor of [the City]. . . ."[20] [L.F. 63-64] (Emphasis added.) Lee made the identical statement in his "Motion to Intervene and for Leave to Join in the Filing of First Amended Petition." [L.F. 78-79] Thus, Lee's premise that Chastain's Election Contest asserted claims by Chastain challenging Mayor James's qualifications to appear on ***both*** the primary and the general election ballots is belied by the record. And even if we accepted the premise, by effectively admitting Chastain had no standing to assert a general election challenge, Chastain and Lee have admitted that Count II of the Amended Election Contest cannot relate back pursuant to Rule 55.33(c). "An amendment will relate back to the original petition so as to save the action from the statute of limitations only when the original plaintiff had the legal right to sue and stated a cause of action at the time the suit was filed." *Smith v. Tang*, 926 S.W.2d 716, 719 (Mo. App. E.D. 1996); *see also Don Roth Development Co., Inc. v. Missouri Highway and Transportation Com'n*, 668 S.W.2d 177, 179 (Mo. App. E.D.) (holding that amended petition adding owner of land as plaintiff did not relate back to original petition as to toll statute of limitations where original plaintiff had no interest in the land and no right to assert owner's claim).

---

[20] Section 115.526.1 authorizes "[a]ny candidate for nomination to an office at a primary election [to] challenge the . . . qualifications of any other candidate for nomination to the same office to seek or hold such office, or to have his name printed on the ballot . . . ." Section 115.526.1 also authorizes "any candidate for election to an office at a general or special election [to] challenge the . . . qualifications of any other candidate for election to the same office to seek or hold such office or to have his name printed on the ballot."

The parties and the trial court have interpreted section 115.526.1 to preclude an unsuccessful primary election candidate from challenging the qualifications of a candidate on a general election ballot because the unsuccessful primary election candidate is not "another candidate for election to the same office" because his name does not appear on the general election ballot.

Because it would not change our conclusion that Count II of the Amended Election Contest did not relate back to the date Chastain's Election Contest was filed, we do not address whether the legislature intended section 115.526.1 to preclude an unsuccessful primary candidate from asserting a challenge to a candidate's qualifications to appear on the general election ballot. Thus, we do not decide whether Chastain would have had standing pursuant to section 115.526.1 to assert a challenge to Mayor James's qualifications to appear on the general election ballot.

In summary, Count II of the Amended Election Contest is time-barred pursuant to section 115.526.2. The trial court had no power to entertain Lee's untimely challenge to Mayor James's qualifications to appear on the general election ballot, and, thus, did not error in dismissing Lee's claim as time-barred pursuant to section 115.526.2. *Foster*, 751 S.W.3d at 44 (holding that strict compliance with election contest statutes is required); *Dally*, 972 S.W.2d at 608 (holding that "[i]nasmuch as statutes governing election contests are a code unto themselves, the jurisdiction of the trial court is confined strictly to the pertinent statutory provisions, hence the letter of the law is the limit of the court's power.") (citing *State ex rel. Conaway*, 417 S.W.2d at 659).

Points seven and eight on appeal are denied.

### Resolution of Remaining Points on Appeal

Because Counts I and II of the Amended Election Contest are time-barred, we need not address the legal issues raised in point one on appeal (addressing whether the administrative remedy described in section 115.342 applied to the City's Mayoral election), or in point two on appeal (addressing whether section 71.005 survived the repeal of section 115.346).[21] Points one and two on appeal are thus denied as moot.

---

[21] If section 71.005 remains in effect, it disqualifies municipal candidates who have not paid "city taxes or municipal user fees" on the last date to declare candidacy. Chastain and Lee alleged that pursuant to section 71.005, Mayor James was not qualified because he owed "city taxes and municipal user fees" on the last date to declare candidacy for Mayor. The parties stipulated that Mayor James owed 2014 ***personal property taxes*** on the last date to declare candidacy for City Mayor. Section 71.005 makes no mention of unpaid "personal property taxes." In other election statutes, including section 115.342, the legislature has differentiated between "personal property taxes" and "municipal taxes." Chastain and Lee have simply assumed with no discussion or analysis whatsoever that "personal property taxes" are "city taxes." This is an issue of legislative intent that cannot be assumed. *Houston*, 197 S.W.3d at 206 (holding that conclusory argument that is not supported by relevant authority is deemed abandoned).

Though never argued by Chastain and Lee for this point, there is some evidence suggesting that a portion of collected personal property taxes are distributed to the City. "Exhibit B" to the Stipulation was represented to be Mayor James's 2014 paid personal property tax receipt. However, Exhibit B to the Stipulation is Mayor James's

26

Because the trial court properly dismissed the Amended Election Contest as time-barred, we also need not address points on appeal three, four, five, or six, as any error in dismissing one or more of the Procedural Motions would be rendered harmless. Points three, four, five, and six on appeal are thus denied as moot.

**Conclusion**

The trial court's Judgment is affirmed.[22]

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

*2012* paid personal property tax receipt. Exhibit B establishes that Mayor James's 2012 personal property taxes were billed and collected by *Jackson County*, Missouri, with a portion thereof "distributed" to the City. Assuming the same scenario applied to Mayor James's 2014 personal property taxes, Jackson County's partial distribution to the City of personal property taxes Jackson County bills and collects may not dictate the meaning of the phrase "city taxes or municipal user fees." *See, e.g., Watts v. Flenoy*, 938 S.W.2d 311, 313 (Mo. App. E.D. 1997) (holding in election contest case that unpaid "sales taxes" owed on a newly purchased vehicle are not "city taxes," the nonpayment of which disqualified the candidate, because "the tax on such sales is a county sales tax, collected by the county and subsequently distributed, in part, to cities"). We need not determine whether *Flenoy* applies by analogy to "personal property taxes" collected by Jackson County and distributed in part to the City. We simply note that Chastain's and Lee's undeveloped assumption that Mayor James owed "city taxes" because he owed "personal property taxes" proved nothing, and preserved nothing for appellate review.

[22] Prior to submission of this case, Mayor James filed a Motion for Damages Pursuant to Rule 84.19. The motion is denied.