Gary D. Witt, Judge
The Director of Revenue ("Director") appeals from the trial court's judgment granting Donald Bisig's ("Bisig") petition requesting reinstatement of his driver's license. The Director argues that the trial court erred in granting Bisig's petition because the Director had good cause to request Bisig to submit to a driving skills test. We reverse and remand.
Statement of Facts
The hearing below was submitted entirely on written records and no live testimony was presented. On June 9, 2016, Bisig's primary care physician, Dr. Bryan Green ("Dr. Green"), sent the Department of Revenue ("Department") Form 4319[1] - the Department's "Driver Condition Report" - pertaining to Bisig. On the Form 4319, Dr. Green reported that Bisig had suffered a stroke and that he had left arm weakness. Form 4319 instructs a person to complete the form if he or she has personal knowledge about a driver he or she believes is no longer able to safely operate a motor vehicle. On the second page, Form 4319 requests that "[p]hysicians, please complete Form 1528 and attach to this report." Form 1528 has significantly more detail regarding medical conditions that may affect a person's ability to safely drive and requires the driver to complete significant portions of the Form 1528. Dr. Green did not submit Form 1528 at the time he submitted Form 4319.
On June 14, 2016, after receiving the Form 4319 from Dr. Green, the Department sent Bisig a "Request for Testing" letter, requiring Bisig to complete and pass a vision examination and a driving skills examination by July 15, 2016, or his driving privilege would be revoked for one year. The letter stated that the Department had received information that Bisig's driving abilities needed to be re-evaluated to ensure he had the skills required to safely operate a motor vehicle. The letter had two types of tests that he needed to complete: a "Vision Examination," and a "Driving Skills Examination" to be completed by a Missouri State Highway Patrol Examiner based on the type of driver's license classification that Bisig held.
On June 17, 2016, Bisig's optometrist filled out and signed Form 999, Vision Examination Record. The optometrist indicated on the Form that Bisig had "20/40 or better in either eye or both eyes when wearing corrective lenses."
On June 29, 2016, Bisig took and failed a driving skills examination. The report of the June 29th exam stated in part that:
Mr. Bisig was in an improper position to make a left turn, while turning out of the parking lot. He failed to look over his left shoulder, to check traffic when *389 changing lanes on a one-way street. When approaching a stop sign, I stopped Mr. Bisig from rear-ending a car. His test was discontinued due to a hazardous moving violation.
On July 7, 2016, Bisig failed a second driving skills examination. The report of the July 7th exam stated in part that:
Mr. Bisig failed to look over his right shoulder during the backing exercise. While performing the parallel parking exercise, Mr. Bisig had three or more pull-ups, failed to use his turn signal, and did not look over his left shoulder to check traffic when pulling out. Mr. Bisig failed to stop behind the white line at a traffic light. Mr. Bisig came to a complete stop at a nonstop intersection. While making a left turn, one of the vehicle's wheels were out of his lane, resulting in a short turn. His test was discontinued due to excessive points.
On July 14, 2016, Bisig failed a third driving skills examination. The report of the July 14th exam stated in part that:
Mr. Bisig made a left turn from the right lane, on a one-way street, with traffic involved. His test was discontinued due to a hazardous moving violation.
On August 1, 2016, the Department sent Bisig a letter revoking his driving privilege, stating that on August 31, 2016, his "privilege to drive a motor vehicle in Missouri will be revoked for one year for failure to pass the vision and road test."
On August 10, 2016, Bisig submitted Form 1528 - Physician's Statement - to the Department. On the Form 1528, Dr. Green checked boxes that indicated that Bisig had temporary left arm and leg weakness. Dr. Green also checked the box for "[l]ikely capable of operating a motor vehicle safely and responsibly." He also indicated, "There are no medical contraindications at this time. No further evaluation appears to be needed."
On August 17, 2016, Bisig submitted Form 4595 - Application for Limited Driving Privilege - to the Department. Bisig included his Form 999, Vision Examination Record and proof of insurance. On August 23, 2016, the Department sent Bisig a letter denying his application for limited driving privilege because he had "been cited to complete a vision or physical examination or to demonstrate [his] ability to safely operate a motor vehicle pursuant to Section 302.173, RSMo."
On August 26, 2016, Bisig filed a Petition to Review Revocation of Driver's License and/or, in the alternative, Review the Denial of Limited Driving Privileges in the Buchanan County Circuit Court ("Petition"). A stay order was granted by the court, staying the revocation of Bisig's driving privileges on August 31, 2016. The Director filed an answer. A hearing on the Petition was held on May 1, 2017. The case was submitted on the written records and the evidence set forth above was adduced from those records. Neither party challenges the content of those records but only the conclusions the trial court reached based on those records.
At the hearing, Bisig did not argue that the Department failed to establish grounds to revoke his license based on his failure to pass the driving skills test but limited his argument that the Director did not have good cause to require him to take a vision and driving skills examination. Bisig submitted a trial brief and a supplemental brief. On June 7, 2017, the trial court issued its judgment reinstating Bisig's driving privilege. The trial court found the following:
10. The Director of Revenue had the burden when issuing the "Request for Testing" to cite accurate information from the "Form 4319" submitted by the *390 original physician in this case. The evidence is clear and uncontroverted that the "Form 4319" did not allege any problems with the Petitioner's visual impairment, yet the Director subsequently suspended the Petitioner's license based on his "failure to obtain a vision examination." The "Request for Testing" never requested any type of medical examination other than a vision examination.
11. This Court finds that the Director of Revenue had the burden of providing accurate information in the "Request for Testing" submitted by Petitioner. There was absolutely no information contained in the "Form 4319" that supported the Director of Revenue's "Request for Testing" which requested a vision examination. The Director of Revenue had the burden of proving the conditions existed to authorize the suspension of the Petitioner's Driving privileges. This Court finds that the Director of Revenue has failed to meet that burden.
Based on the trial court's prior stay order and its final judgment, Bisig's license was not suspended or revoked.
This timely appeal followed.
Standard of Review
"Because [this] case was submitted on stipulated facts and did not involve the trial court's resolution of conflicting testimony, our review is not governed by Murphy v. Carron , 536 S.W.2d 30, 31 (Mo. banc 197[6] ) ; rather 'the only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated.' " Chastain v. James , 463 S.W.3d 811, 817 (Mo. App. W.D. 2015) (quoting Archey v. Carnahan , 373 S.W.3d 528, 531 (Mo. App. W.D. 2012) ). "Thus our review is de novo. " Id. "Whether the Director's determination of good cause had an adequate basis is a question of law." Leaton v. Dir. of Revenue , 187 S.W.3d 894, 896 (Mo. App. W.D. 2006). "The Director bears a heavy burden of proving that good cause exists under section 302.291,[2 ] and we do not consider any evidence that was not before the director when the good cause determination was made." Id.
Analysis
The Director raises one point on appeal. In his sole point on appeal, the Director argues that the trial court erred in granting Bisig's Petition because the Director had good cause to request that Bisig submit to a vision examination and a driving skills examination.
Pursuant to the statute, "[t]he director, having good cause to believe that an operator is incompetent or unqualified to retain his or her license, after giving ten days' notice in writing by certified mail directed to such person's present known address, may require the person to submit to an examination as prescribed by the director." Section 302.291.1. The tests the Director may request include but are not limited to: "a written test and tests of driving skills, vision, highway sign recognition and, if appropriate, a physical and/or mental examination[.]" Section 302.291.2. "Upon conclusion of the examination, the director may allow the person to retain his or her license, may suspend, deny or revoke the person's license, or may issue the person a license subject to restrictions[.]" Section 302.291.1.
"The issue is not whether there was good cause to revoke the license; rather, we determine whether there was good cause to require the licensed driver to *391 submit to a driving skills examination." Leaton , 187 S.W.3d at 896. "The determination of whether the Director abused her discretion turns on what evidence was available to the Director when she made the good cause determination." Nagel v. Dir. of Revenue , 180 S.W.3d 90, 93 (Mo. App. E.D. 2005) (The court found that the Director did not have good cause to require Nagel be tested when a Driver's License Bureau clerk "merely observed that Mr. Nagel needed assistance walking and had 'barely' passed the vision examination."). The Director may rely on the official report of a physician when such report sets "forth facts from which a reasonable person could believe that he should exercise the discretion granted by section 302.291." Leaton , 187 S.W.3d at 897.
Here, the Director and Bisig submitted the case to the trial court on the written records. The record provided the Form 4319 filled out by Dr. Green, which is all that was to be considered when determining if the Director had good cause to require testing since it was the only information before the Director at the time the Director made the good cause determination. See Leaton , 187 S.W.3d at 896. The record also provided the results of the subsequent vision and driving skills examinations which Bisig obtained. Thus, the only issues before the trial court were whether the Director had good cause to require testing and subsequently following that testing whether conditions existed sufficient to revoke Bisig's driver's license. In its judgment, the trial court found that the Director failed to meet his burden because there was insufficient evidence to show that the Director had good cause to require Bisig submit to a vision test. The trial court then found that since the Director failed to meet his burden that he had good cause to require a vision test, he failed to meet his burden that there was sufficient conditions to revoke Bisig's license.
The trial court's judgment errs in placing the focus of the question of "good cause" on the type of testing requested by the Director rather than on the initial question of whether any testing was warranted. Under section 302.291.1, the Director must have "good cause" to believe that a driver is incompetent or unqualified to retain a driver's license and thus needs to be tested. Once such "good cause" is established, section 302.291.2 allows the Director to order a written test, a test of driving skills, vision test, and/or highway sign recognition test with no limitation which would require a showing of "good cause" as to the specific type of test ordered. The only limitation as to the type of testing is that only "if appropriate" may the Director order a physical or mental examination by a licensed physician as provided for in Section 302.173.
Despite Bisig and the trial court's focus on whether the Director had "good cause" to order a vision test, this question is immaterial. The proper focus is solely on whether there was good cause for the Director to believe that Bisig was "incompetent or unqualified" to retain a driver's license. If the answer is in the affirmative, then the Director had the authority to order both a vision test and a driving skills examination.
Once good cause is established to order testing, the results of that testing are used to determine if the driver's license should be revoked. Bisig passed the vision test and that would not be grounds for the revocation of his license. But the vision test was not the sole grounds upon which the Director notified him that his license was being revoked. The Director also notified Bisig that his license was being revoked based upon Bisig's failure to *392 pass the vision examination and the driving skills examination. The trial court does not make any finding that the Director failed to have good cause to require the driving skills test.
When properly framed, the question before this Court is whether there was good cause to believe Bisig was "incompetent or unqualified" to retain his driver's license and thus submit to testing, a question which we review de novo. Chastain , 463 S.W.3d at 817. In this case, we find the Director had good cause to believe Bisig was incompetent or unqualified to retain his license to drive and thus require the driving skills test and subsequently Bisig's license was properly revoked based on his failure to pass the driving skills examination. Under section 302.291.3, the Director "shall have good cause to believe that an operator is incompetent or unqualified" if, inter alia , "[a]ny physician" gives such a report. Section 302.291.3(2).
Dr. Green filled out Form 4319, which is submitted only if one is concerned about an individual's ability to safely operate a vehicle. On the Form 4319 Dr. Green, Bisig's primary care physician, diagnosed Bisig with left arm weakness resulting from a stroke. By filling out the Form 4319, Dr. Green is stating that in his opinion Bisig's left arm weakness impacts Bisig's ability to safely drive. Bisig argues that the failure of Dr. Green to also complete the Form 1528 and submit it with the Form 4319 is fatal to the Director's case. While Dr. Green did not attach and submit Form 1528 with Form 4319, Dr. Green was under no statutory or regulatory obligation to do so and such a deficiency does not affect the reliability of such a report. Form 4319, merely states in one line on the second page, "Physicians, please complete Form 1528 and attach to this report." Nothing mandates that a physician complete the additional form and nothing provides that absent the second form the Director cannot take action based on a physician solely filing a Form 4319. Further, in order to complete portions of Form 1528 the patient is required to voluntarily provide significant information. If a patient refuses to fill out these portions of the form, a completed Form 1528 may never be submitted, effectively making it impossible for a physician to submit a Form 1528 without the consent of the patient. If the patient agreed that they should not be driving, it is logical that the person would stop driving and there would be no reason for the physician to submit the form or for the Director to revoke the person's driver's license. As noted above, the statute merely requires "a report by" "any physician." The purpose of the statute in allowing certain persons to report concerns regarding someone's ability to safely operate a vehicle is to remove drivers from the road who will not voluntarily recognize their own limitations.
This case is unlike that in Nagel , where it was found that the Director did not have good cause to require testing solely because a clerk at a Driver's License Bureau noticed Nagel was having trouble walking but had passed a vision test. Here it was Bisig's primary care physician who filled out the Form 4319 and stated that Bisig had left arm weakness following a stroke calling into question Bisig's ability to safely operate a vehicle. We find the Form 4319 filled out by Dr. Green provided the Director good cause to require the driving skills examination. Bisig failed that driving skills examination three times and this provided the grounds for the revocation of Bisig's license.
Conclusion
The trial court's judgment is reversed and remanded to the trial court for Bisig's *393 license to be revoked for one year pursuant to the statute.
All concur

Form 4319 is a form created by the Department pursuant to Section 302.291 RSMo to allow certain persons, including police officers, family members and medical providers to report concerns regarding an individual's ability to safely operate a vehicle due to physical or mental issues.

All statutory references are to RSMo 2016 as currently supplemented unless otherwise indicated.