

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **MISSOURI CHAMBER OF COMMERCE AND INDUSTRY,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | **WD81805** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **April 9, 2019** |
| **MISSOURI ETHICS COMMISSION, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Patricia S. Joyce, Judge**

**Before Division Four:**  Karen King Mitchell, Chief Judge, and
Alok Ahuja and Thomas N. Chapman, Judges

The Missouri Chamber of Commerce and Industry (the Chamber) appeals the denial of its request for a declaratory judgment to the effect that the Missouri Campaign Contribution Reform Initiative of 2016 (Amendment 2) allows contributions from a corporation's treasury to a political action committee (PAC) established, administered, or maintained by the corporation.  In its sole point on appeal, the Chamber argues that the trial court erred in concluding that Amendment 2 prohibits contributions from a corporation to such a PAC.  Because we conclude that the plain and ordinary meaning of the language of Amendment 2, read in its entirety, prohibits contributions

from a corporation to a PAC established, administered, or maintained by the corporation, we affirm.

## Background

On November 8, 2016, Missouri voters passed Amendment 2, which became effective at the end of the 30th day after the election. Amendment 2 added a new section to the Missouri Constitution, titled the "Missouri Campaign Contribution Reform Initiative." Mo. Const. art. VIII, § 23. Amendment 2 imposes restrictions on the types of campaign contributions that corporations like the Chamber may make. The Chamber is a not-for-profit corporation organized pursuant to 26 U.S.C. § 501(c)(3) of the Internal Revenue Code and is registered as a nonprofit corporation with the Missouri Secretary of State. The Chamber established, administered, and maintained a PAC called the "We Mean Business PAC."

Following passage of Amendment 2, the Missouri Ethics Commission (MEC), which investigates and enforces the laws governing campaign finance disclosure, issued two advisory opinions. In Advisory Opinion No. 2017.03.CF.010, dated March 27, 2017, MEC concluded that "because [§ 23.3(3)(a)] expressly authorizes specific types of individual contributions but does not specifically authorize the contributions from the entity's treasury or funds, a corporation . . . may not contribute its own funds to its connected[1] political action/continuing committee." In Advisory

---

[1] Amendment 2 does not use the phrase "connected political action committee" or "connected continuing committee." Amendment 2, however, defines a "connected organization" as

> any organization such as a corporation . . . which expends funds to provide services or facilities to establish, administer or maintain a committee or to solicit contributions to a committee from its members, officers, directors, employees or security holders. An organization shall be deemed to be the connected organization if more than fifty percent of the persons making contributions to the committee during the current calendar year are members, officers, directors, employees or security holders of such organization or their spouses.

Mo. Const. art. VIII, § 23.7(6)(d). Therefore, in using the phrase "connected political action/continuing committee," the MEC meant a committee established, administered, or maintained by a connected organization.

Opinion No. 2017.07.CF.014, dated July 14, 2017, MEC reaffirmed its earlier conclusion about connected PACs. There, MEC stated, "The Commission discussed the application of [§§ 23.3(3)(a) and 23.3(12)] as they relate to corporate . . . contributions to PACs in MEC No. 2017.03.CF.010. The Commission stated that a corporation . . . may not contribute its own funds to its connected PAC, but that it may contribute direct corporate . . . funds to an 'unconnected' PAC."

The Chamber filed a petition for declaratory judgment challenging MEC's conclusion that Amendment 2 prohibits contributions from a corporation to its connected PAC. The case was tried and submitted on stipulated facts. The trial court entered judgment in favor of MEC, concluding that Amendment 2

> make[s] clear that while a corporation may not make direct contributions to committees tied to candidates or political parties, it may create, support and control its own PAC that may, in turn, make such contributions, provided the PAC is not funded with the corporation's own money. The connected PAC, in turn, may make various election-related expenditures—such as contributing to candidate committees—that a corporate connected organization may not. If a corporation wishes to "maintain" or "administer" a connected PAC, it may not contribute its own funds to that PAC, but it may solicit contributions to the PAC from its own directors, officers, employees, members, and shareholders.

> By permitting connected PACs to receive contributions from corporate directors, officers, employees, members and shareholders but *not* the corporation itself, Amendment 2 prevents corporations from circumventing the prohibition on corporate contributions to candidates and political parties. Without that important limitation, corporations could evade [Amendment 2's] prohibitions by simply creating a connected PAC, contributing corporate funds to that PAC, and then directing the PAC to contribute to candidates or political parties of the corporation's choice.

The Chamber appeals.

## Standard of Review

This case was submitted on stipulated facts and, thus, "did not involve the trial court's resolution of conflicting testimony." *Ritter v. Ashcroft*, 561 S.W.3d 74, 84 (Mo. App. W.D. 2018)

(quoting *Chastain v. James*, 463 S.W.3d 811, 817 (Mo. App. W.D. 2015)). Therefore, "the only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated." *Id.* (quoting *Chastain*, 463 S.W.3d at 817). Here, the trial court's ruling was based on the interpretation and application of Amendment 2 to the stipulated facts; "[t]hus, our review is *de novo*." *Id.* (quoting *Chastain*, 463 S.W.3d at 817).

**Analysis**

In its sole point on appeal, the Chamber argues that the trial court erred in granting judgment in MEC's favor because Amendment 2 does not prohibit contributions from a corporation to its connected PAC when the corporation is acting as a connected organization because (1) § 23.3(3)(a) does not list "connected organization" among the entities to which a corporate contribution is prohibited; and (2) § 23.3(12) expressly permits contributions from a corporation to a PAC. We disagree. Although the Chamber's descriptions of two isolated provisions of Amendment 2 are accurate, the plain and ordinary meaning of the language of Amendment 2 in its entirety does, in fact, prohibit contributions from a corporation to its connected PAC when the corporation is acting as a connected organization.

In construing a constitutional provision, we follow the same rules we apply when interpreting statutes. *Mo. State Emps.' Ret. Sys. v. Salva*, 504 S.W.3d 748, 751 (Mo. App. W.D. 2016). "Words used in constitutional provisions are interpreted to give effect to their plain, ordinary, and natural meaning." *Wright-Jones v. Nasheed*, 368 S.W.3d 157, 159 (Mo. banc 2012). "The primary goal in interpreting a constitutional provision is to ascribe to the words of the provision the meaning that the people understood them to have when the provision was adopted." *Salva*, 504 S.W.3d at 751. "[D]ue regard is given to the primary objectives of the [constitutional] provision in issue as viewed in harmony with all related provisions, considered as a whole." *Mo.*

4

*Prosecuting Attorneys v. Barton Cty.*, 311 S.W.3d 737, 742 (Mo. banc 2010) (*quoting Boone Cty. Court v. State*, 631 S.W.2d 321, 324 (Mo. banc 1982)). Every word in the Missouri Constitution must be given meaning and cannot be ignored as mere surplusage. *State Highways & Transp. Comm'n v. Dir., Mo. Dep't of Revenue*, 672 S.W.2d 953, 955 (Mo. banc 1984). Courts should avoid constructions of the Missouri Constitution that are unreasonable or would lead to absurd results. *Salva*, 504 S.W.3d at 752. And, "where one statute deals with [a] subject in general terms and the other deals in a specific way, to the extent they conflict, the specific statute prevails over the general statute." *In re Gardner*, 565 S.W.3d 670, 676 (Mo. banc 2019) (quoting *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 668 (Mo. banc 2010)).

Amendment 2 establishes a set of rules that govern corporate contributions. Section 23.3(3)(a) of Amendment 2 makes it unlawful for a corporation

> to make contributions[2] to a campaign committee, candidate committee, exploratory committee, political party committee or a political party; except that a corporation . . . may establish a continuing committee which may accept contributions or dues from members, officers, directors, employees or security holders.

Mo. Const. art. VIII, § 23.3(3)(a).[3] Section 23.3(12) of Amendment 2 authorizes PACs to receive contributions from, among others, "corporations, associations, and partnerships formed under chapters 347 to 360, RSMo, as amended from time to time . . . ." *Id.* at § 23.3(12). A corporation that spends its own funds or provides services to either "establish, administer or maintain" a PAC

---

[2] "Contribution" is defined as "a payment . . . for the purpose of supporting or opposing the nomination or election of any candidate for public office or the qualification, passage or defeat of any ballot measure, or for the support of any committee supporting or opposing candidates or ballot measures . . . ." Mo. Const. art. VIII, § 23.7(7). However, the definition of "contribution" excludes the "direct or indirect payment" by a connected organization "of the costs of establishing, administering, or maintaining a committee, including legal, accounting and computer services, fund raising and solicitation of contributions for a committee." *Id.* at § 23.7(7)(h). Likewise, Amendment 2's definition of "expenditure" excludes a connected organization's payment of "costs of establishing, administering or maintaining a committee, including legal, accounting and computer services, fund raising and solicitation of contributions for a committee." *Id.* at § 23.7(12)(d).

[3] Section 23.3(3)(b) excepts a certain type of corporation from the prohibition in § 23.3(3)(a), but that exception is not relevant here. *See* Mo. Const. art. VIII, § 23.3(3)(b).

or solicit contributions for that PAC (referred to by MEC in its opinions and the parties as a "connected PAC") is a "connected organization." *Id*. at § 23.7(6)(d).

Under Amendment 2, the definition of a PAC is almost identical to the definition of a "continuing committee,"[4] with the only substantive difference being that, in addition to candidate and campaign committees (excluded from the definition of continuing committees), PACs also do not include political party, exploratory, or debt service committees. *Id.* at § 23.7(20). In other words, PACs are a subset of continuing committees.

In passing Amendment 2, Missouri voters declared that "political contributions from corporations . . . can unfairly influence the outcome of Missouri elections[,]" making limits on corporate contributions necessary. *Id.* at § 23.2. To that end, the first clause of § 23.3(3)(a) bars a corporation from contributing to committees associated with candidates or political parties. The second clause of § 23.3(3)(a), however, provides that "a corporation may establish a continuing committee which may accept contributions . . . from members, officers, directors, employees or security holders." As noted, *supra*, a PAC is, by definition, a continuing committee. *Id.* at §§ 23.7(6)(c) and (20). Thus, pursuant to § 23.3(3)(a), a corporation may establish a PAC.

When a corporation establishes a PAC, the corporation is acting as a "connected organization." *Id.* at § 23.7(6)(d) (a "[c]onnected organization" includes a "corporation . . . which

---

[4] Amendment 2 defines "continuing committee," in pertinent part, as

> a committee of continuing existence which is not formed, controlled or directed by a candidate, and is a committee other than a candidate committee or campaign committee, whose primary or incidental purpose is to receive contributions or make expenditures to influence or attempt to influence the action of voters . . . . "Continuing committee" includes, but is not limited to, any committee organized or sponsored by a business entity, . . . whose primary purpose is to solicit, accept and use contributions from the members, employees or stockholders of such entity and any individual or group of individuals who accept and use contributions to influence or attempt to influence the action of voters.

Mo. Const. art. VIII, § 23.7(6)(c).

expends funds or provides services or facilities to establish, administer or maintain a committee or to solicit contributions to a committee from its . . . officers, directors, employees or security holders."). Thus, a PAC established by a corporation can be accurately described as a connected PAC. There is nothing in Amendment 2 that prohibits a connected PAC from making contributions to committees associated with candidates or political parties. *Id.* at §§ 23.7(6)(c) and 23.7(20). Thus, a connected PAC may make various election-related contributions that its sponsoring corporate connected organization may not.

Although the second clause of § 23.3(3)(a) does not expressly prohibit a corporation from contributing to a connected PAC, when read as a whole, it is clear that § 23.3(3)(a) is intended to prohibit such contributions. The second clause of § 23.3(3)(a) begins with the word "except," which makes clear that a corporation's establishment of a connected PAC is intended to create an exception to the general prohibition on corporate contributions to committees associated with candidates or political parties set out in the first clause. In addressing what a corporation may do in relation to a connected PAC, the second clause only mentions the "establish[ment]" of a connected committee. By definition, the costs incurred by a corporation in establishing a connected PAC are not considered to be "contributions" or "expenditures." *Id.* at §§ 23.7(7)(h) and 23.7(12)(d). Thus, it appears that the word "except" at the beginning of the second clause is used to clarify that, while the first clause of § 23.3(3)(a) prohibits a corporation from making *contributions* to committees associated with a candidate or political party, the corporation may *establish* a connected PAC, which the corporation may direct and control and which may, itself, contribute to candidates and political parties.

The second clause of § 23.3(3)(a) also lists from whom the connected PAC "may accept contributions" (corporate "officers, directors, employees and security holders") and that list does

7

not include the establishing corporation.  The rule of statutory construction known as "expressio unius est exclusio alterius" or "the express mention of one thing implies the exclusion of another," *McCoy v. The Hershewe Law Firm, P.C.*, 366 S.W.3d 586, 594 (Mo. App. W.D. 2012), supports the conclusion that the express mention of specific individuals from whom a connected PAC may accept contributions—coupled with obvious omission of the establishing corporation itself—suggests that exclusion of the corporation as an entity that may *contribute* to the connected PAC was intentional.  Thus, the second clause provides a mechanism for corporate officers, directors, employees and others associated with the corporation, but not the corporation itself, to make contributions to a PAC that the corporation establishes.

This reading of the second clause of § 23.3(3)(a) is consistent with definitions of "continuing committee" and "political action committee," which provide that those types of committees include, but are not limited to, "any committee organized or sponsored by a business entity . . . or other organization and *whose primary purpose is to solicit, accept and use contributions from the members, employees or stockholders of such entity . . . .*" *Id.* at §§ 23.7(6)(c) and 23.7(20) (emphasis added).  The term "sponsored" is not defined in Amendment 2, so we look to the dictionary to determine the plain and ordinary meaning of that term.  *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 809 (Mo. banc 2017).  A "sponsor" means "a person or organization that pays for or plans and carries out a project or activity."  *Sponsor*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/sponsor (last visited April 2, 2019).  That definition is wholly consistent with the supporting role connected organizations play in Amendment 2.  Together, these definitions demonstrate that (1) a connected PAC may accept contributions from the officers, employees, and stockholders of the sponsoring connected organization but not the organization itself; and (2) a connected organization may support its

8

connected PAC with "legal, accounting and computer services, [and] fund raising and solicitation of contributions for a committee" without violating the prohibition on direct contributions from the corporation to its connected PAC. Mo. Const. art. VIII, §§ 23.7(6)(c) and 23.7(20).

Read as a whole, the plain and ordinary meaning of Amendment 2's language prohibits corporations from contributing directly to committees associated with a candidate or political party but allows corporations to establish and support connected committees, which may both make and receive contributions from individuals associated with the corporation. This reading of § 23.3(3)(a) is supported by the text of that section, the definitions of the various terms used throughout Amendment 2, and the express purpose of Amendment 2, which is to restrict political contributions by corporations. To read the second clause of § 23.3(3)(a) to allow corporations to contribute to a connected PAC would effectively circumvent the ban on corporate contributions to committees associated with candidates and political parties set out in the first clause, facilitating the risk or appearance of *quid pro quo* corruption.

The Chamber makes two arguments in support of its contention that Amendment 2 allows corporate contributions to connected PACs: (1) § 23.3(3)(a) does not list "connected organization" as an entity to which a corporation is prohibited from contributing; and (2) § 23.3(12) generally allows corporations to contribute to PACs and connected PACs should be treated the same. But the Chamber's arguments disregard both the structure and plain meaning of § 23 as discussed above.

The Chamber's first argument—that Amendment 2 allows corporate contributions to connected PACs because § 23.3(3)(a) does not specifically list "connected organization" as an entity "to which a corporate contribution is unlawful"—misinterprets what falls within the definition of a "connected organization." Section 23.7(6)(d) defines a "[c]onnected organization"

9

as "any . . . corporation . . . which expends funds or provides services . . . to establish, administer or maintain a committee or to solicit contributions from its . . . officers, directors, employees or security holders" or a corporation whose officers, directors, employees or security holders or their spouses make up more than fifty percent of the persons making contributions to a committee. In short, a "connected organization" is the organization that supports and establishes a connected PAC and not the PAC receiving the support. While common parlance might describe both the supporting corporation and the supported PAC as connected organizations, we cannot ignore the fact that "connected organization" is a defined term in Amendment 2. And, in light of that definition, the failure to specifically refer to a "connected organization" in § 23.3(3)(a) does not overcome its plain and ordinary meaning.[5]

The Chamber's second argument—that Amendment 2 allows corporate contributions to connected PACs because § 23.3(12) expressly allows a corporation to contribute to *any* PAC— fails for several reasons. First, the general permission granted by § 23.3(12) cannot override Amendment 2's more specific restrictions applicable to connected organizations. *In re Gardner*, 565 S.W.3d at 676 (quoting *Turner*, 318 S.W.3d at 668) ("where one statute deals with [a] subject

---

[5] It appears the point the Chamber is trying to make with its first argument is that, because § 23.3(3)(a) does not list "connected committees" as one of the entities to which a corporation may not contribute, a corporation is allowed to make such contributions. Rather than using the phrase "connected committee or PAC," which does not appear in Amendment 2, the Chamber mistakenly uses "connected organization." Even if the Chamber had argued that a corporation may contribute to its connected committee or PAC because § 23.3(3)(a) does not expressly preclude such contributions, we would reject that argument because it ignores the interplay between §§ 23.3(3)(a) and 23.7(6)(d). Read together, those sections indicate that, while a corporation may not make direct contributions to committees tied to candidates or political parties, it may create, support, and control its own PAC that may, in turn, make such contributions, provided the PAC is not funded by corporate contributions. We will not read § 23.3(3)(a) in isolation, as the Chamber would have us do, but instead must view that section "in harmony with all related provisions, considered as a whole[,]" including § 23.7(6)(d). *Mo. Prosecuting Attorneys v. Barton Cty.*, 311 S.W.3d 737, 742 (Mo. banc 2010) (*quoting Boone Cty. Court v. State*, 631 S.W.2d 321, 324 (Mo. banc 1982)). Also, even if the Chamber had argued that a corporation may contribute to its connected committee or PAC because § 23.3(3)(a) does not expressly preclude such contributions, we would reject that argument because it renders portions of Amendment 2 superfluous as discussed *infra*.

in general terms and the other deals in a specific way, to the extent they conflict, the specific statute prevails over the general statute.").[6]

Second, the Chamber's interpretation of § 23.3(12) would render Amendment 2's provisions concerning connected organizations "meaningless surplusage," thereby violating the statutory construction tenet that every word in the Missouri Constitution must be given meaning. *State Highways & Transp. Comm'n*, 672 S.W.2d at 955. If a corporation were permitted to contribute to *any* PAC, including its connected PAC, there would be no need for § 23.3(3)(a) to identify the persons who may contribute to a connected PAC. Mo. Const. art. VIII, § 23.3(3)(a). And § 23.7(7)(h)'s exemption of money that a connected organization spends to maintain and administer a connected PAC from the definition of "contribution" would be unnecessary. For, if a corporation were allowed to contribute its funds to a connected committee, there would be no need to exempt the corporation's payments of the costs of "establishing, administering, or maintaining" a connected committee from the definition of "contribution." Mo. Const. art. VIII, § 23.7(7)(h).

Similarly, the Chamber's interpretation of the interplay between § 23.3(12) and § 23.3(3)(a) undercuts the purpose of Amendment 2 and § 23.3(3)(a)'s express ban on certain corporate contributions. First, as noted *supra*, Amendment 2 expressly states that, in adopting this constitutional amendment, the voters were attempting to address the potentially unfair influence of corporate political contributions on elections. To accomplish this purpose, § 23.3(3)(a) bans contributions by corporations to committees associated with candidates or political parties. To

---

[6] The Chamber argues that we must adopt its reading of Amendment 2 to avoid a potential violation of the free-speech guarantee contained in the First Amendment to the United States Constitution. The Chamber does not argue, however, that prohibiting direct corporate contributions to committees associated with candidates and political parties is inconsistent with First Amendment principles. If, to avoid the risk or appearance of *quid pro quo* corruption, the State may constitutionally prohibit direct corporate contributions to such committees, then there is no constitutional problem in barring corporations from making such contributions indirectly, through the mechanism of a political action committee that the corporation controls.

11

interpret the interplay between § 23.3(12) and § 23.3(3)(a) as the Chamber suggests effectively negates the ban on contributions in the first clause of § 23.3(3)(a) by allowing corporations to make such contributions indirectly through a connected PAC that the corporation controls. "The primary goal in interpreting a constitutional provision is to ascribe to the words of the provision the meaning that the people understood them to have when the provision was adopted." *Salva*, 504 S.W.3d at 751.

For these reasons, the Chamber's only point on appeal is denied.

**Conclusion**

Because we conclude that the plain and ordinary meaning of Amendment 2 prohibits contributions from a corporation to its connected PAC, we affirm.

_____

Karen King Mitchell, Chief Judge

Alok Ahuja and Thomas N. Chapman, Judges, concur.

12